**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-02299-001-TUC-RCC (EJM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Jaime Enriquez-Venzor, | |
| Defendant. | |

This case arises from the arrest of Defendant Jaime Enriquez-Venzor on or about October 17, 2018 in Naco, Arizona by United States Border Patrol agents. When the agents arrested Defendant, he did not have proper immigration documents and had not received the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States after his previous removal. The Government subsequently filed a Criminal Complaint on October 18, 2018, alleging a violation of § 1326(a) and (b) of Title 8 of the United States Code. A federal grand jury then indicted Defendant on the charge of violating 8 U.S.C. § 1326(a), enhanced by 8 U.S.C. § 1326(b), for Illegal Reentry after having been denied admission, excluded, deported, and removed from the United States on November 6, 2017.

Pending before the Court is Defendant's Motion to Dismiss the Indictment. (Doc. 22). Defendant collaterally attacks his 2007 deportation order upon which the current charge is based. Defendant alleges that the underlying deportation proceedings that serve as predicate to the current charge violated his Fifth Amendment Due Process rights

because: (1) immigration officials failed to explain to Defendant that he was in formal removal proceedings and failed to notify him of the charge of inadmissibility; (2) Defendant was not served with Form I-860 for his signature acknowledging receipt; (3) the I-867B indicated only one of the four pages of Defendant's sworn statement was reviewed with him; and (4) immigration officials failed to inform him that he could request to withdraw his application for admission. Defendant further argues that these violations prejudiced his 2007 expedited removal proceedings. The Government's Response to Defendant's Motion to Dismiss the Indictment argues that no such due process violations occurred, and that even if they did, the violations did not prejudice Defendant. (Doc. 32).

The Court concludes that all of Defendant's arguments regarding due process violations are without merit. However, even if Defendant's due process rights were violated, there is no evidence that Defendant suffered any prejudice as a result of said violations. Therefore, the undersigned recommends that the District Court deny the motion to dismiss the indictment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a citizen of Mexico. (Doc. 32 at 1:24). On February 27, 2007, he attempted to enter the United States from Mexico at the Paseo del Norte Port-of-Entry in El Paso, Texas. (Doc. 22 at 3:3–5; Doc. 22-1 Ex. 4 [Enriquez-Venzor Decl.] at ¶ 6). In order to gain entry, Defendant presented immigration officials with a Form DSP-150, Laser Visa, bearing the name of another individual but including a picture of the Defendant. (Doc. 22 at 3:5–6; Doc. 22-1 Exs. 1, 2 at 2). Upon suspecting the document was fraudulent, immigration officials placed Defendant in secondary inspection and then expedited removal proceedings. (Doc. 22 at 3:7–8).

Defendant was questioned by Customs and Border Protection Officer Andres Arroyo, Jr. (Officer Arroyo), in his native Spanish language.[1] (Doc. 22-1 at 1; Doc. 32 at

---

[1] The I-867A states that the interview was conducted "[i]n the Spanish language" and that no interpreter was used. (Doc. 22-1 Ex. 2 at 1). The Government's Response to the Motion to Dismiss the Indictment also notes that Officer Arroyo is fluent in Spanish.

2:3–6).   The interview was recorded on Form I-867A, Record of Sworn Statement in Proceedings under § 235(b)(1) of the Act, and Defendant initialed all four pages of the form.[2] (Doc. 22-1 Ex. 2 at 1–4).  Form I-867A includes a preliminary section where the officer explains the defendant's rights, as well as "the purpose and consequences of [the] interview." *Id.* at 1.  This admonition states:

> I am an officer of the United States Immigration and Naturalization Service.  I am authorized to administer the immigration laws and to take sworn statements. I want to take your sworn statement regarding your application for admission to the United States.  Before I take your statement, I also want to explain your rights, and the purpose and consequences of this interview.
>
> You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States. This may result in your being denied admission and immediately returned to your home country without a hearing. If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of five years or longer.
>
> This may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision.  It is very important that you tell me the truth. If you lie or give misinformation, you may be subject to criminal or civil penalties, or barred from receiving immigration benefits or relief now or in the future.
>
> Except as I will explain to you, you are not entitled to a hearing or review. U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country.  If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance.  You will have the opportunity to speak privately and confidentially to another officer about your fear or concern.  That officer will determine if you

(Doc. 32 at 2 n.1).   Defendant's Declaration states that he was interviewed in both Spanish and English, but also confusingly avers the he "was/was not read [his] rights in Spanish."   (Doc. 22-1 Ex. 4 [Enriquez-Venzor Decl.] at 2 ¶¶ 7, 10).   Given this confusion, as well as Officer Arroyo's testimony at the hearing, the Court assumes that the interview was done entirely in Spanish.

[2] The Court notes that Defendant's signed Declaration states that he was "told where to sign and initial" on the form, that he did not understand what he was signing or initialing, and that no one told him that he "had any option but to sign and initial." (Doc. 22-1 Ex. 4 [Enriquez-Venzor Decl.] at 2 ¶¶16–18).

should remain in the United States and not be removed because of that fear.

Until a decision is reached in your case, you will remain in the custody of the Immigration and Naturalization Service.

Any statement you make may be used against you in this or any subsequent administrative proceeding.

*Id.*

In response to whether Defendant understood the explanation provided by Officer Arroyo, Defendant responded "[y]es."[3] *Id.* When Officer Arroyo questioned Defendant about the fraudulent document used for attempted entry into the United States, Defendant admitted that he bought the Laser Visa for $5,000 in Tijuana, Mexico from an unknown individual. (Doc. 22 at 3:7–9; Doc. 22-1 Ex. 2 at 3; Doc. 32 at 2:18–19). Defendant went on to acknowledge that he knew he could not legally enter the United States and that on four previous occasions he had been apprehended by Border Patrol before being sent back to Mexico without formal deportation.[4] *Id.* at 3. However, on the final page of the sworn statement, Form I-867B, Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1), it indicates that Defendant "read (or have had read to me) this statement, consisting of 1 pages (including this page)." *Id.* at 4. This is despite the fact that the entirety of the form consisted of a total of four pages. *Id.* at 1-4. Defendant signed the form under the one-page acknowledgement. *Id.* at 4.

As a result of the interview, immigration officials issued a Form I-860, Notice and Order of Expedited Removal, indicating they found Defendant inadmissible under § 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA") and ordered him removed. (Doc. 22-1 Ex. 1 at 1). Officer Arroyo signed the form's Certificate of Service indicating he served the original copy of the form to Defendant. *Id.* However, Defendant did not sign the back of this form acknowledging receipt as required by law. (Doc. 22 at

---

[3] Defendant claims that he was never informed that he was in formal removal proceedings or what the formal charge of inadmissibility was. (Doc. 22-1 Ex. 4 [Enriquez-Venzor Decl.] at ¶ 13).

[4] The Court notes that Defendant argues that these voluntary departures are "uncorroborated." (Doc. 22 at 10:6).

4:6–8).  Finally, officials also issued Form I-296, Notice to Alien Ordered Removed/Departure Verification, indicating that Defendant was barred from entering the United States for 5 years.  (Doc. 22-1 Ex. 3 at 1).[5]  The form was signed by both Officer Arroyo and Defendant.  *Id.*

Defendant later returned to the United States and was convicted of Dealing in Methamphetamine in Marion County Superior Court, Indianapolis, Indiana on June 2, 2015, and sentenced to 20 years of imprisonment with 18 years suspended.  (Doc. 32 at 3:15–18).  The 2007 expedited order of removal was reinstated and Defendant was removed from the United States to Mexico on September 2, 2016.  *Id.* at 3:18–20. Defendant was again apprehended in the United States on December 18, 2016, and on June 14, 2017 was convicted of Reentry of a Removed Alien (8 U.S.C. § 1326(a)/(b)) and sentenced in the United States District Court for the District of New Mexico to 12 months and one day imprisonment and three years of unsupervised release.  *Id.* at 3:21–25. Defendant was removed from the United States to Mexico on November 6, 2017.  *Id.* at 4:1–2.

On October 17, 2018, Border Patrol agents apprehended Defendant five miles north of the Naco Port-of-Entry in Arizona.  *Id.* at 4:4–9.  Defendant claimed to be a Mexican citizen and admitted that he was in the United States illegally.  *Id.* at 4:10–11. On October 18, 2018, the Government filed its Criminal Complaint against Defendant in the United States District Court for the District of Arizona.  (Doc. 1).  The Government charges Defendant with violations of § 1326(a) and (b)(1) of Title 8 of the United States Code.  *Id.*  The Complaint alleges that Border Patrol agents found Defendant "in the United States at or near Naco, Arizona, without the proper immigration documents" after having been "lawfully denied admission, excluded, deported and removed from the United States through Del Rio, Texas" on November 6, 2017.  *Id.*  A federal grand jury then returned a one-count indictment against Defendant for a violation of 8 U.S.C. §

---

[5] Defendant claims that he was never informed that he was formally removed from the United States or barred from reentering the country.  (Doc. 22-1 Ex. 4 [Enriquez-Venzor Decl.] at 3 ¶ 21).

1326(a) (enhanced by 8 U.S.C. § 1326(b)(1)) for Illegal Reentry on November 14, 2018. (Doc. 7). Defendant entered a plea of not guilty on November 30, 2018.

Defendant filed the pending Motion to Dismiss the Indictment on March 23, 2019. (Doc. 22). Defendant seeks to collaterally attack his 2007 removal order, which serves as the predicate to the present charges, and argues that due process violations prejudiced his 2007 expedited removal proceedings. *Id.* at 1. Specifically, Defendant argues that due process violations occurred when immigration officials failed to: explain that he was in formal removal proceedings and what his charge of removability was; serve Defendant with Form I-860 for his signature on the reverse side of the form acknowledging receipt; review his sworn statement as evidenced by the I-867B, Jurat for Recorded Statement, only indicating one of the four pages was reviewed; and inform Defendant that he could request to withdraw his application for admission. *Id.* at 8:11–19. Further, Defendant argues that these due process violations prejudiced him because it was plausible that immigration officials would have granted a request to withdraw his application for admission. *Id.* at 9:14–19.

The Government filed its Response to Defendant's Motion to Dismiss the Indictment on April 9, 2019. (Doc. 32). The Government argues that Defendant's 2007 removal did not violate his due process rights and is valid. *Id.* at 4:23. Specifically, the Government argues that the agents complied with the relevant regulations and that the failure of Defendant to sign the back of the Form I-860 was a mere "technical violation" that does not rise to a due process violation. *Id.* at 8:9–16. Additionally, the Government argues that even if Defendant meets his burden to establish a due process violation, there was no plausible relief available to Defendant at the time of his initial deportation and he therefore suffered no prejudice related to the 2007 expedited removal proceedings. *Id.* at 11:4–8.

Defendant filed a Reply to the Government's Response to the Motion to Dismiss the Indictment on April 16, 2019. (Doc. 35). Defendant argues that the immigration officers did not adequately comply with the regulations and statutes governing expedited

removal proceedings and that such failures rise to the level of a due process violation. *Id.* at 3:6–10. Defendant also reiterates his argument that there was plausible relief available to him in the form of withdrawal of his application for admission. *Id.* at 5:20–22.

## **THE EVIDENTARY HEARING**

An evidentiary hearing on the motion was held on June 11, 2019. The defense called no witnesses. The Government called one witness: CBP Officer Andres Arroyo, Jr.

### A.    **CBP Officer Arroyo**

Officer Arroyo testified that he has worked for Customs and Border Protection (CBP) since 1996 and that from 1996 to 2014 he worked in immigration processing at various ports-of-entry in El Paso, Texas. (Doc. 43 at 4–5). During his time working in immigration processing, CBP trained Officer Arroyo on how to administer expedited removals and complete all the accompanying paperwork. *Id.* at 5. Officer Arroyo's duties in February of 2007 included processing applicants at the Paseo del Norte Port-of-Entry, inspecting documents, taking declarations, and intercepting illegal entrants into the United States. *Id.*

Officer Arroyo did not remember processing Defendant specifically but confidently confirmed his involvement in Defendant's removal.[6] *Id.* at 6–7. He stated he could be confident that he was involved because his signature appeared on the documents and it would not be on them unless he personally processed the individual. *Id.* at 7. Based on his review of the documents, Officer Arroyo also stated that on February 27, 2007 immigration officers originally suspected Defendant of attempting to enter the United States with a fraudulent document during primary inspection at the port-of-entry. *Id.* at 7–8. Suspecting fraud, officers then placed Defendant in a temporary detention cell for an interview. *Id.* at 8. There, he admitted to using a fraudulent document in an

---

[6] Because Officer Arroyo had no actual knowledge of processing Defendant for expedited removal, all of his answers to questions were based on his review of the removal documents and his own practices.

attempt to enter the United States and a folder was prepared for Officer Arroyo to process Defendant. *Id.*

According to Officer Arroyo, he followed the same procedure every time he processed an individual at the port-of-entry. *Id.* at 9–10. When he first sat down with someone to be processed in a situation involving fraud, Officer Arroyo would explain to the alien that he or she was going to be placed in deportation proceedings due to the use of the fraudulent document and that Officer Arroyo would be obtaining his or her sworn statement. *Id.* at 10. After that initial explanation, Officer Arroyo would read the admonition that appears at the beginning of Form I-867A to the alien in its entirety.[7] *Id.* at 11–13. The admonition explains the alien's rights and the consequences of the interview (including that the alien may be barred from reentry to the United States for five years or more). *Id.* at 11–12. It also explains that the alien should tell the interviewing officer if he or she fears being sent back to his or her country. *Id.* at 12. Officer Arroyo stated that based on his review of the documents in this case, he saw no indication that Defendant did not understand this admonition and that he was confident he went over it with Defendant. *Id.* at 13–14.

After reviewing the admonition, Officer Arroyo would then proceed to conduct the interview for the sworn statement. *Id.* at 14. Once the interview finished, he then would review each question and answer with the individual to verify that each recorded response was accurate. *Id.* After review of each page, Officer Arroyo would have the individual initial the bottom of the page. *Id.* at 16. Because Defendant's initials appear at the bottom of pages one through three of the sworn statement, and in the middle of the page on the fourth page, Officer Arroyo stated that he was confident that he reviewed each page of responses with Defendant. *Id.* at 16–19. Officer Arroyo also explained that the default setting of the computer program for I-867Bs automatically listed one (1) as the number of pages reviewed with the alien. *Id.* at 20. Despite this default error, Officer

---

[7] Officer Arroyo did note that here he would have read it all in Spanish, both his and Defendant's primary language. *Id.* at 13.

Arroyo was confident that he reviewed the whole statement with Defendant in this case due to the presence of Defendant's initials at the bottom of each page, and that therefore the statements therein were accurate.[8] *Id.* at 20–21.

Officer Arroyo also testified that, based on his procedures and practices, he always read verbatim the Form I-860, Notice and Order of Expedited Removal, to the alien and that Officer Arroyo would never sign the document certifying delivery unless he had reviewed it with the deportee. *Id.* at 24–25. Officer Arroyo admitted that he did not know that the regulations required him to have the alien sign the back of the form. *Id.* at 26. However, in this case, Officer Arroyo stated he had no doubts that he served Defendant with this form due to the presence of his own signature on the document. *Id.* The same goes for Officer Arroyo's signature on the I-296, Notice to Alien Ordered Removed/Departure Verification. *Id.* at 28. Because he saw his own signature on that form, Officer Arroyo was confident he reviewed the document with Defendant prior to Defendant's removal. *Id.* Defendant's signature on that form also confirmed to Officer Arroyo that Defendant verified that he received notice and warning about not being allowed to return to the United States for five years. *Id.* at 29. Finally, Officer Arroyo stated that CBP practice did not allow for an alien to withdraw an application for admission if fraud was present, absent certain circumstances not applicable here.[9] *Id.* at 30–31.

On cross examination, Officer Arroyo averred that he always tried to fill out expedited removal forms as accurately as possible and that he believed he did so in this case based on the records. *Id.* at 37–39. During Officer Arroyo's time conducting expedited removal proceedings, CBP would send "updates" of any changes made to the

---

[8] For instance, Officer Arroyo noted the admissions in the sworn statement regarding Defendant's procurement of the fraudulent document and knowledge that he could not legally enter the United States. *Id.* at 22.

[9] Including if an applicant was a minor, was mentally incompetent to understand the consequences of the proceedings, was elderly, could overcome the charge of inadmissibility, had another immigration benefit pending, or had a legal application for admission pending. *Id.* at 31.

regulations to him as they occurred, but there was never any formal, "sit-down" training on these changes. *Id.* at 39. Further, Officer Arroyo stated that although he had his practices and procedures, they were also tailored to the individual circumstances. *Id.* at 43–44. Officer Arroyo confirmed that there were no rough notes, audio recordings, or video of the expedited removal proceedings and that there was no indication in the records that Officer Arroyo told Defendant he could request to withdraw his application for admission. *Id.* at 45. On redirect, Officer Arroyo reiterated that the initials on the bottom of the pages on the I-867 always meant the same thing to him: that he had gone over the questions and answers of the sworn statement with the alien. *Id.* at 46.

In response to the Court's question, Officer Arroyo stated that he only learned of the regulation requiring an alien sign the back of Form I-860 to acknowledge receipt during the lead up to this hearing. *Id.* at 48. Officer Arroyo also confirmed that none of the I-860s he, or any other immigration inspector at the Paseo del Norte Port-of-Entry at that time, processed would have signatures on the back of Form I-860 because none of them knew it was a regulatory requirement. *Id.*

## DISCUSSION

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the [g]overnment must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotations and citations omitted). However, "a defendant charged under Section 1326 has a due process right to 'collaterally attack his removal order because the removal order serves as a predicate element of his conviction.'" *Id.* (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 2047 (9th Cir. 2004)). A defendant wishing to challenge the validity of the underlying deportation must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d)(2018).  To establish that a removal order is fundamentally unfair, the defendant bears the burden to demonstrate that: (1) his due process rights were violated by defects in the underlying deportation proceeding; and (2) he suffered prejudice because of the defects.  *United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1047 (9th Cir. 2018).  A defendant suffers prejudice when there existed plausible grounds for relief from the removal order at the time of the due process violations.  *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996).

Here, Defendant cannot carry his burden to demonstrate that his 2007 expedited removal proceedings were "fundamentally unfair."  *See* 8 U.S.C. § 1326(d)(3). Defendant has not sufficiently shown that his due process rights were violated during his 2007 expedited removal proceeding.  Further, even if there were such violations, they did not prejudice Defendant because there was no plausible ground for relief available to him at that time.

## I.     Due Process in an Expedited Removal Proceeding

Expedited removal proceedings permit immigration officers to order certain aliens removed if they determine that the aliens are inadmissible under § 1182(a)(6)(C) of Title 8 of the U.S. Code.[10]  8 U.S.C. § 1225(b)(1)(A)(i).  There is no further hearing or review of the removal order unless the alien indicates an intention to apply for asylum or a fear of persecution.  *Id.*  There are federal regulations that govern immigration officials' conduct during expedited removal proceedings.  8 C.F.R. § 235.3.  These regulations codify the immigration officer's duty to inform the alien of the charge against him and to allow the alien to review the sworn statement prepared in his name.  *Raya-Vaca*, 771 F.3d at 1204.  The Code of Federal Regulations provides, in relevant part:

> In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration

---

[10] Section 1182(a)(6)(C) provides in relevant part that "any alien whom by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States . . . is inadmissible."  8 U.S.C. § 1182(a)(6)(C)(i).

officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I–860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

8 C.F.R. § 235.3(b)(2)(i).

Under the INA, there is typically no meaningful review of the validity of an expedited removal proceeding. 8 U.S.C. § 1225(b)(1)(A)(i) (immigration officers "shall order the alien removed from the United States without further hearing or review); *see also Barajas-Alvarado*, 655 F.3d at 1082. However, the Supreme Court has held that a criminal defendant charged under § 1326 has a Fifth Amendment right to "*some meaningful review*" of the prior administrative proceeding that resulted in the predicate exclusion, deportation, or removal order. *United States v. Mendoza-Lopez*, 104 U.S. 828, 837–38 (1987). This "some meaningful review" standard protects a criminal defendant's right to challenge a predicate removal order but is limited to challenging the proceeding as fundamentally unfair for violating a defendant's due process rights and resulting in prejudice. *See Barajas-Alvarado*, 655 F.3d at 1084–85, 1091. Therefore, in analyzing each individual case regarding expedited removal, courts must decide whether any available procedures were violated as provided by the immigration statutes and regulations, and whether those violations amount to a deprivation of due process. *See Raya-Vaca*, 771 F.3d at 1205 (holding that failing to advise the defendant of the charge

against him and to review his sworn statement violated his due process rights); *Barajas-Alvarado*, 655 F.3d at 1091 (finding that even assuming due process violations for inadequate translation services, there was no evidence that the defendant was prejudiced by that violation).

## A. Notice and Opportunity to Respond

"Although not every violation of a regulation rises to the level of a due process violation . . . Due process always requires at a minimum, notice and an opportunity to respond." *Raya-Vaca*, 771 F.3d at 1204 (citations omitted). In the expedited removal context, "any failure to inform [defendant] of the charge against him and to provide him the opportunity to review the sworn statement constitute[s]" a violation of a defendant's due process rights. *Id.* In *Raya-Vaca*, the Ninth Circuit concluded that the defendant's due process rights to notice and an opportunity to respond were violated. *Id.* at 1205. The defendant averred in a signed declaration that no immigration officer ever notified him that he was in a formal removal proceeding or what the consequences of that proceeding could be. *Id.* Additionally, although he initialed all four pages of his Form I-867 and signed his Jurat, the defendant stated that he did not know what he was signing and the Jurat only indicated that the defendant read or had read to him the last page, "none of which spoke to his admissibility." *Id.* Critically, the government in that case did not contest the defendant's assertions. *Id.* However, the District of Arizona has also found mere technical violations of the regulations do not amount to violations of due process. *United States v. Ramos-Zepeda*, 2016 WL 1720188, at *27 (D. Ariz. Apr. 29, 2016), *adopted by* 2016 WL 3345517 (D. Ariz. June 16, 2016) (the court concluded that the immigration officer's failure to have the defendant sign the back of Form I-860 was only a "technical violation").

Here, Defendant had due process rights to notice and an opportunity to respond during his expedited removal proceedings. Defendant's main contention is that his expedited removal proceedings violated those rights like in *Raya-Vaca*. (Doc. 22 at 8:18–22; 9:1-5; 11:8–9). Just like in *Raya-Vaca*, the Defendant averred in his signed

declaration that no one told him he was in formal removal proceedings or what the formal charge of inadmissibility was. (Doc. 22-1 Ex. 4 at 2 ¶ 13). Also like in *Raya-Vaca*, Defendant initialed all four pages of his sworn statement and signed his I-867B, but it indicated that officials only reviewed the last page of that form with him. Bolstering his claim that he lacked notice and an opportunity to respond is the fact that he never signed his Form I-860 acknowledging receipt of his determination of admissibility, although it was signed by Officer Arroyo certifying service on Defendant. However, unlike in *Raya-Vaca*, here the Government does contest Defendant's assertions that no one told him he was in formal removal proceedings, what the formal charge of inadmissibility was, or what the consequences of the proceedings were.

Officer Arroyo testified before this Court as to the procedures and practices that he followed every time he processed aliens for expedited removal. He stated that he would always read the admonition at the beginning of Form I-867A in its entirety to the interviewed alien and would do so in Spanish if necessary. He further testified that the default computer setting for the Form I-867B was to indicate that it consisted of one page, but that despite that default error appearing in the present case he was confident that he reviewed all four pages of Defendant's sworn statement due to the presence of Defendant's initials on each page. Finally, Officer Arroyo testified that until recently he was unaware that aliens were required to sign the back of Form I-860 to acknowledge receipt of the Notice of Removal. He also informed the Court that all I-860s coming from the Paseo del Norte Port-of-Entry would also carry no such signatures due to the same mistaken belief as to the regulatory requirements. However, he stated that he would never sign the certificate of service on that form without having reviewed it with, and served it upon, the alien.

Given Officer Arroyo's testimony, the Court finds that Defendant failed to satisfy his burden to demonstrate that his due process rights to notice and an opportunity to respond were violated. Officer Arroyo did not have actual knowledge about the processing of Defendant twelve years ago, but he did testify as to what he always did

under those circumstances. Outside of Defendant's assertions to the contrary, there is nothing in the record to indicate that Officer Arroyo failed to follow those practices in this instance. Officer Arroyo did fail to have Defendant's Form I-867B indicate all of the pages that were reviewed with Defendant, to have Defendant sign each page of the I-867AB, and to have Defendant sign the back of Form I-860 acknowledging his receipt of the notice of removal. These failures all violated the regulatory requirements found in 8 C.F.R. § 253.3(b)(2)(i).[11] However, in light of Officer Arroyo's testimony that based on his practices and review of the documents in this case he was confident that he notified Defendant of the charge against him, reviewed all of Defendant's sworn statement with him, and read and served Defendant with Form I-860, the Court finds that Defendant did receive notice of the charge against him and had an opportunity to respond to that charge. Therefore, Officer Arroyo's failure to adhere to the regulations, although troubling, amounts to "technical violations" in this instance.

## B.     Failure to Inform Alien of Possible Relief

Under circuit precedent, immigration judges must inform an alien facing deportation of possible relief from removal if the alien "raises a reasonable possibility" for relief under 8 U.S.C. § 1182(h). *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). *Muro-Inclan* was based on a regulation that existed at the time, which required that immigration judges "shall inform the respondent of his or her apparent eligibility to apply for … [a waiver of deportation]." *Id.* (quoting 8 C.F.R. § 240.49(a)). However, no such precedent exists as to whether immigration officers, during expedited removal proceedings, need to instruct aliens that they may request to withdraw their application for removal. *See Raya-Vaca*, 771 F.3d at 1206 n. 9 ("we do not address

---

[11] The Court recognizes the importance of the regulatory requirements in protecting an alien's due process rights. However, the crux of an alien's rights lies not in strict adherence to every regulation, but in whether an alien is informed of the charge of inadmissibility and has an opportunity to respond. *See Raya-Vaca*, 771 F.3d at 1204 ("Although not every violation of a regulation rises to the level of a due process violation . . . Due process always requires at a minimum, notice and an opportunity to respond.").

Raya-Vaca's argument that he was constitutionally entitled to other protections—namely, the right to be advised of potential relief").  Additionally, there is no similar mandatory language within the regulations regarding an immigration officer's responsibilities during an expedited removal proceeding that mirror those involved in *Muro-Inclan*.  *See* 8 C.F.R. § 235.3(b).  Nor does any similar language appear in the regulation explaining withdrawal.  *See* 8 C.F.R. § 1235.4.

Here, Defendant's last assertion of a due process violation is that Officer Arroyo failed to inform him of a possible avenue for relief from deportation; namely, withdrawal of his application for admission.[12]  However, based on the following, the Court finds this argument unpersuasive.  First, the language found in 8 C.F.R. § 235.3(b) does not have a similar mandatory requirement to inform aliens of their apparent eligibility to request to withdraw their applications for admission.  Therefore, the mandatory language that was the basis of the decision in *Muro-Inclan* is not present here.  Second, the regulation covering withdrawal of an application for admission, 8 C.F.R. § 1235.4, also does not have any language that states that an immigration officer *must* inform an alien of the possibility of requesting to withdraw his or her application for relief.  Finally, even if Defendant is right in his assertion that *Muro-Inclan* and *Leon-Paz* require that an immigration officer needs to inform an alien that he or she can request to withdraw the application for admission, there is nothing in the instant case that makes it seem that Defendant "rais[ed] a reasonable possibility" for relief that would have required Officer Arroyo to do so.  As explained further below, the facts of this case do not reflect that there was even "some evidentiary basis" for Officer Arroyo to allow Defendant to withdraw his application.  It is not expected that Officer Arroyo be "clairvoyant," but rather, to be required to advise of possible relief, the situation "must [have] fairly raise[d] the issue" of withdrawal.  *See Muro-Inclan*, 249 F.3d at 1183.  Here, due to the presence

---

[12] The Court notes that Defendant did not argue the applicability of *Muro-Inclan* in his Motion to Dismiss, instead just claiming that the circumstances of this case mirror the assertion of *Raya-Vaca*. (Doc 22 at 8:18–22; 9:1–5).  During the hearing on the motion, however, Defendant did argue that *Muro-Inclan* and *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003) require that he be notified of his possibility to withdraw his application for admission. (Doc. 43 at 51–52, 57).

of fraud and an underwhelming set of unique circumstances, there was no reasonable possibility for relief that would have required Officer Arroyo advise Defendant of his ability to request to withdraw his application for admission.

Therefore, given the foregoing discussion, Defendant has not carried his burden to show that he suffered due process violations at his 2007 expedited removal proceedings.

## II. Prejudice

In order to succeed in collaterally attacking a prior removal order that serves as predicate to a § 1326 charge for illegal reentry, a defendant must also show that any due process violations resulted in prejudice. *Barajas-Alvarado*, 655 F.3d at 1088–1089 ("Even assuming that the equivocal evidence in the record establishes that [defendant] suffered a due process violation . . . we must still consider whether such error resulted in prejudice."). Prejudice is not presumed, and the burden is on the defendant to prove prejudice existed. *United States v. Leon-Leon*, 35 F.3d 1428, 1432 (9th Cir. 1994). To establish prejudice, a defendant must demonstrate that there were "plausible grounds for relief" from the removal order. *Jimenez-Marmolejo*, 104 F.3d at 1086. A plausible ground for relief does not mean that a defendant must establish that he would have definitely received such relief. *Barajas-Alvarado*, 655 F.3d at 1089 (citations omitted). However, the claim to relief must go beyond the "theoretically possible," and the defendant must establish "some evidentiary basis on which relief could have been granted." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012). "Where the relevant form of relief is discretionary, the alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *Barajas-Alvarado*, 655 F.3d at 1089 (citations and internal quotations omitted).

In the expedited removal context where the alien has not claimed a fear of persecution or applied for asylum, an alien's only possible relief from removal is withdrawal of the application for admission to the United States. *See* 8 U.S.C. § 1225(a); 8 C.F.R. § 1235.4. However, the alien does not have a right to withdraw the application for admission, but rather is only permitted to do so upon the discretionary decision of the

immigration official. 8 C.F.R. § 1235.4 ("The alien's decision to withdraw his or her application must be made voluntarily, but nothing in this section shall be construed to give an alien the right to withdraw his or her application for admission."). Courts look to the Inspector's Field Manual, an internal document prepared by the agency to guide immigration inspectors' exercise of discretion, to inform their determination of whether relief was plausible even though the manual is not entitled to the force of law. *See Barajas-Alvarado*, 655 F.3d at 1090 n. 16; *Raya-Vaca*, 771 F.3d at 1207 (noting that the Inspector's Field Manual provides "helpful insight as to when relief is plausible"). The Inspector's Field Manual instructs immigration officers to decide whether to issue an expedited removal order or to permit withdrawal by weighing relevant factors, including but not limited to:

> (1) [t]he seriousness of the immigration violation; (2) [p]revious findings of inadmissibility against the alien; (3) [i]ntent of the alien to violate the law; (4) [a]bility to easily overcome the ground of inadmissibility (i.e., lack of documents); (5) [a]ge or poor health of the alien; and (6) [o]ther humanitarian or public interest considerations.

INS Inspector's Field Manual § 17.2(a) (2007), *available at* Westlaw FIM-INSF-MAN 17.2, 2007 WL 7710869. While this weighing of factors is important, "[a]n expedited removal order should ordinarily be issued, rather than permitting withdrawal, in situations where there is obvious, deliberate fraud on the part of the applicant. For example, where counterfeit or fraudulent documents are involved." *Id.* When this deliberate fraud exists, and the listed factors do not cut in a defendant's favor, the Ninth Circuit has found that no plausible grounds for relief are available. *See Barajas-Alvarado*, 655 F.3d at 1090–91. Additionally, although statistics suggesting the frequency with which aliens were permitted to withdraw their applications may help a court find in favor of plausibility, *Raya-Vaca*, 771 F.3d at 1209, a "general statistic," without more, does not adequately demonstrate that relief was plausible. *United States v. Corrales-Beltran*, 192 F.3d 1311, 1318 (9th Cir. 1999).

Here, even if Defendant could establish due process violations occurred, he simply

had no plausible ground for relief available to him at the time of his removal. Defendant did not express a fear of persecution or apply for asylum.[13] His only possible relief from removal was therefore to withdraw his application for admission to the United States at the discretion of the immigration officer. That decision is informed by the officer's weighing of the factors outlined in the Field Inspector's Manual. Despite Defendant's application of those factors, he fails to adequately explain how he could have overcome the crucial issue that deliberate fraud or misrepresentation typically warrants against permitting withdrawal. In support of his assertion that relief was plausible, Defendant cites to *Raya-Vaca*'s recognition that an individual with a conviction for false statement may be offered withdrawal. (Doc. 22 at 8:21–22; 9:1–3). However, Defendant fails to also recognize the most crucial fact about the *Raya-Vaca* case that makes it distinguishable from the instant case: Raya-Vaca did not commit deliberate fraud when entering the United States. *Raya-Vaca*, 771 F.3d at 1208 ("Therefore, a crucial consideration that . . . 'ordinarily' militates against withdrawal . . . is absent here."). Further, not only does the Field Inspector's Manual state that withdrawal should not be offered in cases of deliberate fraud, Officer Arroyo also testified that it is CBP practice to not allow aliens to withdraw their applications in those cases absent certain circumstances (such as being a minor, elderly, mentally incompetent, or having other immigration benefits or applications pending). (Doc. 43 at 30–31). Since Defendant did commit deliberate fraud, and acknowledges it in his Motion, that fact weighs heavily against any possibility that he would have been permitted to withdraw his application.

Additionally, none of the other listed factors weigh in Defendant's favor. First, committing deliberate fraud in an attempt to enter the United States is a serious

---

[13] The Court notes that Defendant argues that if he had been informed of his right to apply for asylum "he might have been referred for a credible fear interview and able to overcome any ground of inadmissibility." (Doc. 22 at 11:3–4). However, Officer Arroyo testified that he always reads the admonition explaining that right. (Doc. 43 at 11–13). Further, nothing in Defendant's motion even begins to suggest that any basis for asylum or fear of persecution existed in 2007.

immigration violation. Second, while it is not clear from the record,[14] Defendant may have previously been removed from the United States on four prior occasions. Third, Defendant *deliberately* violated the immigration laws of the United States. Fourth, considering this deliberate fraud, it is unlikely he could have overcome the ground of inadmissibility (8 U.S.C. 1182(a)(6)(C)(i)). Fifth, Defendant's age[15] and health[16] at the time of his removal do not support a favorable exercise of discretion. Sixth, the humanitarian considerations Defendant asserts (that he sought entry to work and support his wife and daughter) would apply to almost every individual attempting to enter the United States. While certainly a consideration, it is highly unlikely that this favorable factor would overcome all the others. Finally, Defendant's general statistic as to how often aliens were permitted to withdraw their applications for admission[17] also seems highly unlikely to overcome the individual circumstances of this case.

In sum, Defendant did not suffer prejudice as a result of any due process violations that may have occurred during his 2007 expedited removal proceedings because it is implausible that he would have been offered permission to withdraw his application given his deliberate fraud. Further, analysis of the enumerated factors in the Inspector's Field Manual does not suggest that Defendant could have overcome the presumption that militates against withdrawal in cases involving deliberate fraud. Therefore, even assuming due process violations occurred, Defendant's motion still must

---

[14] Defendant contests the four prior voluntary returns as being "uncorroborated." (Doc. 22 at 10:6). The Government asserts these voluntary returns as fact. (Doc. 32 at 2:20–23).

[15] Defendant was 36 years old at the time of his expedited removal.

[16] There is no evidence that Defendant was in poor health at the time of his expedited removal.

[17] Defendant argued that Department of Homeland Security statistics showing that "approximately 70 percent of individuals in expedited removal proceedings were allowed to the [sic] withdraw their applications for admission" (44% in fiscal year 2008) are objective evidence that supports the assertion that relief was plausible. (Doc. 22 at 10:12–13). Even if Defendant is correct, however, it is not indicated how many of those cases involved circumstances militating against withdrawal because of the existence of deliberate fraud.

be denied because no prejudice existed.

## CONCLUSION

The undersigned recommends that the District Court issue an order denying Defendant's motion to dismiss the indictment. Defendant failed to meet his burden to demonstrate that his 2007 expedited removal proceedings were fundamentally unfair. *See* 8 U.S.C. § 1326(d)(2018). Defendant has not satisfied his burden to demonstrate that due process violations occurred in light of the testimony of Officer Arroyo. Even assuming, *arguendo*, that Defendant satisfied that burden, he has not adequately shown that any prejudice resulted from said violations. Because the Field Inspector's Manual states that immigration officers should not ordinarily grant withdrawals of applications for admission when there is deliberate fraud or misrepresentation present, and because Defendant deliberately used a fraudulent document to attempt to enter the United States, there was no plausible ground for relief available to Defendant at the time of his initial removal. Therefore, Defendant's motion should be denied.

Pursuant to 28 U.S.C. § 636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR 18-02299-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim P. 59 may result in waiver of the right to review.

Dated this 12th day of July, 2019.

Eric J. Markovich
United States Magistrate Judge